**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alejandro Hernandez, Jr., et al., | No. CV-17-08091-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Lakhvir Singh, et al., | |
| Defendants. | |

**INTRODUCTION**

In this diversity action, Alejandro Hernandez, Jr. and Alejandro Yanez (collectively, "Plaintiffs") allege they sustained injuries when their car was rear-ended on the highway by a semi-truck that was being driven by Lakhvir Singh ("Singh") and that was owned by Mann Carrier, Inc. ("Mann") (collectively, "Defendants"). (Doc. 1-1.) The complaint asserts four causes of action: (1) negligence against Singh; (2) vicarious liability against Mann; (3) negligent hiring, supervision, and training against Mann; and (4) negligent entrustment against Mann. (*Id.*)

Now pending before the Court is Defendants' motion for summary judgment on the third and fourth causes of action, which Plaintiffs oppose. (Docs. 70, 78, 83.) As explained below, the motion will be granted.[1]

---
[1] Defendants have requested oral argument, but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

**BACKGROUND**

I.   The Collision

On March 20, 2015, at approximately 9:26 p.m., Singh was driving a 2010 Kenworth T660 semi-trailer truck eastbound on I-40 in or around Kingman, Mohave County, Arizona. (Doc. 79 ¶ 1.) Plaintiffs were also driving on the I-40 in a 2006 Dodge Durango SLT 4-Door Wagon. (*Id.* ¶ 5.) At some point, Singh's truck collided with the rear end of Plaintiffs' vehicle. The parties dispute who was at fault for the collision.

II.   Singh's Experience

Singh attended and graduated from Sunny Truck Driving School ("Sunny") in Flushing, New York in 1999. (Doc. 71 [Singh Dep.] at 23:25-24:24 [pp. 34-35].)[2] Singh has not taken any truck driving classes since attending Sunny. (Doc. 79-2 [Singh Dep.] at 26:19-25.)

Singh has been an over-the-road truck driver since 2003 and was issued a commercial driver's license in February 2008 by the state of California, which was valid at the time of the collision in this case. (Doc. 79 ¶¶ 12, 13 [Plaintiffs' concession that these points are undisputed].)

Singh has worked for Mann since approximately 2007 as an over-the-road truck driver. (Doc. 79 ¶ 14.) When Singh was hired by Mann, he received only a 30-minute safety orientation, and he has never participated in any safety training classes while

---

[2] In their controverting statement of facts, Plaintiffs dispute Singh's contention that he attended driving school, arguing that "Singh himself was not sure of the correct name of the school that he allegedly attended, and . . . Defendants does [sic] not produce the certificate to verify the name of the institution or even whether he ever attended or graduated from the school." (Doc. 79 ¶ 10.) Plaintiffs' approach is unavailing. Singh's deposition testimony was sufficient to meet Defendants' initial burden of production on the driving-school-attendance issue. It was thus incumbent upon Plaintiffs to present affirmative contradictory evidence on this point (as opposed to merely attacking Singh's credibility). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (citation omitted) ("'[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) ("The possibility that the plaintiff may discredit the defendant's testimony at trial is not enough for the plaintiff to defeat a properly presented motion . . . .").

1  employed by Mann. (Doc. 79-2 at 79:3-20.)

2  The only evidence in the record regarding Singh's motor vehicle collision history comes from Singh's deposition. Before the collision at issue in this case, Singh had been involved in three or four collisions. (Doc. 79-2 at 43:6-14.) One of those occurred while he was working for Mann, and the other two or three occurred while he was driving a taxi. (*Id.* at 43:15-44:3, 45:8-14.) He was also involved in two truck collisions after the one at issue here; in one of those, the other driver was cited, and in the other, cows had come onto the road. (*Id.* at 45:15-47:15.) None of these collisions was Singh's fault. (*Id.* at 47:4-7.)

III. <u>Mann's Employment Documents</u>

In response to a request for production of Singh's "employment file," Defendants produced only drug and alcohol testing records and a California Department of Motor Vehicle Driver History. (Doc. 79-9 at 7-8.) Defendants could not produce any written employee manuals, policies, or procedures or any other writings pertaining to Singh's employment with Mann in effect at the time of the collision. (Doc. 79-9 at 6-7.)

In response to a separate document request, Defendants also could not produce any policies or procedures regarding training or supervising Mann's employees in operating its vehicles from March 20, 2014 onward. (*Id.* at 9.) And Defendants could not produce any employee manuals or handbooks provided to Singh during his employment with Mann. (*Id.* at 10.)

**LEGAL STANDARD**

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

I.    <u>Negligent Entrustment</u>

Defendants[3] seek summary judgment on Plaintiffs' negligent entrustment claim on

---

[3] Although the summary judgment motion was filed by Defendants Singh and Mann (Doc. 70 at 1), the Court notes the complaint also purports to sue certain unspecified "DOE/ROE Defendants" who are named as separate defendants in counts three and four (Doc. 1-1 ¶¶ 5-6, 23, 29). It doesn't appear, from a review of the docket, that Plaintiffs ever attempted to identify or serve these fictitious defendants after this case was removed to federal court in May 2017. Accordingly, and because the arguments in the motion for summary judgment apply equally to the DOE/ROE Defendants, the Court will construe the summary judgment motion as also encompassing the claims in counts three and four against the DOE/ROE defendants. *Slaughter v. Dep't of Homeland Security*, 2010 WL 11519167, *2 n,1 (D. Ariz. 2010) ("The John Doe Defendants have not yet been identified or served, and there is no pending Motion to Dismiss the claims against the John Doe Defendants. However, the Court may consider whether the moving Defendants' arguments for dismissal apply equally to the claims against the John Doe Defendants."). Furthermore, although the summary judgment motion doesn't address counts one and two, Plaintiffs are advised that their claims against the DOE/ROE defendants in those counts are also subject to dismissal.

the ground that Plaintiffs do not have any admissible evidence to support "several essential elements" of that claim, including that: (1) "Singh, by virtue of his physical or mental condition, was incompetent to drive safely"; (2) "Mann Carrier knew or should have known that Mr. Singh, by virtue of his physical or mental condition, was incompetent to drive safely"; and (3) "any entrustment caused the accident." (Doc. 70 at 4-5.) As explained below, although it is unclear whether Plaintiffs must establish that Singh had a "physical or mental condition" that rendered him incompetent to drive—some Arizona courts have suggested the incompetence may arise from other factors, such as youth, inexperience, driving habits, and poor character—the Court nonetheless agrees that Plaintiffs have failed to present sufficient evidence to establish some elements of this claim.

"Arizona recognizes a cause of action for negligent entrustment as set forth in Restatement (Second) of Torts . . . § 390 (1965) . . . ." *Verduzco v. Am. Valet*, 377 P.3d 1016, 1019 (Ariz. Ct. App. 2016). Section 390 provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

In *Verduzco*, the court stated that the elements of a claim for negligent entrustment of a vehicle in Arizona are:

> (1) "that Defendant owned or controlled a vehicle"; (2) "Defendant gave the driver permission to operate a vehicle"; (3) "the driver, by virtue of his physical or mental condition, was incompetent to drive safely"; (4) "the Defendant knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely"; (5) "causation"; and (6) "damages."

377 P.3d at 1019 (citation omitted). However, other Arizona courts have suggested negligent entrustment is not restricted "to cases in which the owner entrusts a vehicle to one known to be incompetent or inexperienced," but rather extends to cases "where the 'third person's known character or the peculiar circumstances of the case are such as to give the actor good reason to believe that the third person may misuse [the instrumentality].'" *Tellez v. Saban*, 933 P.2d 1233, 1239 (Ariz. Ct. App. 1996) (quoting

Restatement (Second) of Torts § 308, cmt. b (1965)); *see also* Restatement (Second) of Torts § 390 (1965) (emphasis added) (negligent entrustment cause of action exists where "supplier knows or has reason to know [entrustee] [is] likely *because of his youth, inexperience, or otherwise*, to use [the instrumentality] in a manner involving unreasonable risk"). Thus, it seems that a claim for negligent entrustment of a vehicle can be "predicated on [the owner's] knowledge of [the driver's] driving habits at the time that she gave him permission to drive the [vehicle]." *Acuna v. Kroack*, 128 P.3d 221, 230 (Ariz. Ct. App. 2006) (citation omitted); *see also Alosi v. Hewitt*, 276 P.3d 518, 526 n.2 (Ariz. Ct. App. 2012) (emphasis added) ("[N]egligent entrustment is based on direct liability of the person authorizing use of the vehicle to a person she knew or should have known was a *risky driver*.").

Nevertheless, even accepting the expansive definition of incompetence suggested in some of the cases identified above, Plaintiffs have not presented evidence sufficient to establish a genuine issue of fact as to whether Singh was incompetent or otherwise unfit to drive when Mann entrusted the vehicle to him. Plaintiffs proffer the following evidence on this issue: (1) Singh attended truck driving school for only 20 hours (if at all) and does not remember much of what he learned; (2) Singh gave an inaccurate answer when asked during his deposition to calculate how many seconds it would take for a similarly sized truck traveling at the same speed to stop after the brakes were applied; (3) Singh was involved in at least four motor vehicle collisions before this one and at least two collisions after this one; (4) Singh has not taken any training classes since 1999 or been provided any training manuals by Mann; and (5) Mann violated the Federal Motor Safety Regulations (FMCSRs) in various ways. (Doc. 78 at 4-7, 11-13.)

None of this evidence creates a genuine issue of fact regarding whether Singh was incompetent to drive safely. First, the undisputed evidence shows that Singh attended truck-driving school in 1999, has been driving as an over-the-road truck driver since 2003, and received his California commercial driver's license in 2008. Although Plaintiffs question the rigor of the particular truck-driving course that Singh attended, the broader

point is that attending driving school can't be considered affirmative evidence of *in*competence (which Plaintiffs must produce to avoid summary judgment).

Second, the question that Singh answered during his deposition (Doc. 79-2 at 63:3-17) was different than the question posed to Defendants' accident reconstruction expert, Jon E. Bready (Doc. 79-6 at 104:1-11), so the fact their answers were different does not provide any evidence of Singh's alleged incompetence or unfitness to drive (and does not necessarily even show that Singh's answer was incorrect). Moreover, not knowing the answer to an abstract physics question is not evidence of incompetence to drive.

Third, although Singh has been involved in five or six other collisions, Singh testified without contradiction during his deposition that none of those collisions was his fault. Additionally, only one of the collisions that preceded the collision in this case involved Singh driving a truck. A rational jury could not find this track record rendered Singh incompetent or unfit to drive. *Cf. Estate of Melucci Through Melucci v. Brown*, 946 F.2d 144, 145-46 (1st Cir. 1991) (trial court properly excluded evidence of truck driver's prior accident, in negligent entrustment action against driver's employer, because there was "no offer [by plaintiffs] to show that [the driver] was at fault" in the prior accident and thus "Plaintiff's complaint of exclusion is extraordinarily frivolous"); *Taft v. Martin*, 540 S.E.2d 332, 334 (N.C. 2000) ("Jonathan's . . . no-fault involvement in three accidents one to two years prior to the collision will not, as a matter of law, support a conclusion that Jonathan was so likely to cause harm to others that entrusting a motor vehicle to him amounted to negligent entrustment.").

Fourth, although Singh has not taken any classes since 1999 or been provided any training manuals, and although Singh could not testify as to what he learned in truck-driving school, these factors do not create a genuine issue of fact as to Singh's competence in light of the undisputed facts that Singh attended truck-driving school in 1999, has been a truck driver since 2003, and received his California commercial driver's license in 2008.

Fifth, and finally, the FMCSR violations alleged by Plaintiffs have no bearing on whether Singh was competent to drive safely. *Ford v. Barnas*, 2018 WL 5312912, *4 (D.

Ariz. 2018) (FMCSR violations do not, in themselves, support the elements of a negligent entrustment claim). Furthermore, Plaintiffs did not show any causal connection between the alleged FMCSR violations and the collision. *See, e.g., Terrell v. Cent. Wash. Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1310-11 (D. Nev. 2016) ("The lack of documentation in the drivers' files had no causal connection with the accident. The plaintiffs present no evidence that the drivers were actually unfit to drive based on any of the information that should have been contained in [employer] files but was not."); *Santana v. Arpin Am. Moving Sys., LLC*, 2009 WL 2462500, *6 (Tex. Ct. App. 2009) ("[N]o summary judgment evidence exists that any violation of any FMCSR by [Defendants] proximately caused the accident."); *Hill v. Western Door*, 2005 WL 2991589, *3 (D. Colo. 2005) ("Absent some evidence of a causal connection between the alleged violation of FMCSR 391.21 or 391.23 and the plaintiffs' injuries, no reasonable fact finder could find for the plaintiffs on this claim."); *Wallen v. Allen*, 343 S.E.2d 73, 78 (Va. 1986) (finding that "no causal connection exist[ed] between [employer's] negligence in failing to maintain the federally required files and the plaintiff's injuries" where "the most meticulous record-keeping would not have disclosed any evidence of [driver's] unfitness").

In sum, Plaintiffs have presented no evidence to establish element three of their claim—a reasonable jury could not find Singh was incompetent to drive safely. For this reason, Plaintiffs also failed to establish element four of their claim—that Mann should have known Singh was unfit to safely operate the truck. Because Plaintiffs "fail[ed] to make a showing sufficient to establish the existence of . . . element[s] essential to [their] case, and on which [they] will bear the burden of proof at trial," the Court grants Defendants' motion for summary judgment on this claim. *Celotex*, 477 U.S. at 322.

II. <u>Negligent Hiring, Supervision, and Training</u>

A. **Parties' Arguments**

Defendants seek summary judgment on the negligent hiring, supervision, and training claim on the grounds that: (1) Plaintiffs did not disclose any legal theory to support this claim; (2) Plaintiffs have no evidence to show a causal link between any negligent

hiring, training, and supervision and the harm; and (3) Plaintiffs have "no evidence to show that Mr. Singh's driving created an undue risk of harm to a third person before the accident happened or that Mann Carrier knew or had reason to know that." (Doc. 70 at 5-7.)

In response, Plaintiffs contend that: (1) "ample evidence" supports their claim, including that Mann had no employee manuals, policies and procedures, or any other writings related to hiring or supervision of its drivers and that Mann violated the FMCSRs, which constitutes negligence per se; and (2) a "triable issue" exists as to whether a 30-minute verbal instruction provided to Singh at orientation constitutes proper training. (Doc. 78 at 14-16.)

In their reply, Defendants contend that: (1) Plaintiffs have not shown that Singh committed a tort during the underlying collision;[4] (2) Plaintiffs failed to present evidence of what Defendants did or did not know while hiring, training, and supervising Singh; (3) Plaintiffs failed to present any evidence of any FMCSR violation or of causation between any violation and the collision; and (4) Plaintiffs failed to present any evidence that Singh was incompetent to drive or that he created an undue risk to third parties.[5] (Doc. 83.)

B. **Legal Standard**

"An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Russell v. Flores*, 2017 WL 564969, *6 (D. Ariz. 2017), *report and recommendation adopted*, 2017 WL 553129 (D. Ariz. 2017) (citation omitted).

For negligent hiring, supervision, and training claims, "Arizona follows the Restatement (Second) of Agency § 213." *Krieg v. Schwartz*, 2015 WL 12669893, *9 (D.

---

[4] Because Defendants did not advance this particular argument in their motion, the Court did not consider it. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[5] Defendants also argue the Court should not consider Plaintiffs' negligence per se theory because Plaintiffs did not plead this theory. This argument is unavailing—Plaintiffs were not required to specifically plead negligence per se because it is not a separate cause of action. *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018) ("Negligence per se is not a cause of action separate from common law negligence. It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care.").

Ariz. 2015) (citing *Kassman v. Busfield Enters., Inc.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981)). Section 213 provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Id.* For an employer to be liable for any of these claims, "a court must first find that the employee committed a tort." *Krieg*, 2015 WL 12669893 at *9 (quoting *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004)). Once the underlying tort is established, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez for & on Behalf of Quinonez v. Andersen*, 696 P.2d 1342, 1346 (Ariz. Ct. App. 1984) (quoting Restatement (Second) of Agency § 213, cmt. d (1952)).

Thus, for a negligent hiring claim to lie, the employer must have known or had some reason to know of the employee's incompetence before hiring the employee. *Andersen*, 696 P.2d at 1346 (employer must possess "antecedent[]" knowledge of unfitness); *see also Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1321 (Colo. 1992) (citing Restatement (Second) of Agency § 213, cmt. d (1952)) ("[L]iability is predicated on the employer's hiring of a person under circumstances antecedently giving the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities."); *Ayon v. Lincare Inc.*, 2006 WL 2372294 (W.D. Wash. 2006) ("In order to prevail on his claim for negligent hiring, Plaintiff must show that [the employer] knew, or in the exercise of ordinary care, should have known of [the employee's] unfitness at the time of hiring.").

Similarly, to prove negligent supervision, the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue. *Vasquez v. City of Phoenix*, 2006 WL 1147716, *4 (D. Ariz. 2006) ("To prove negligent supervision and retention, Plaintiff must show that the City knew or should have known that Officers Jones and Kincannon were not competent police officers and that the City's retention of and failure to supervise the officers caused injury to Plaintiff."); *Humana Hosp. Desert Valley v. Superior Court of Arizona In & For Maricopa Cty.*, 742 P.2d 1382, 1386 (Ariz. Ct. App. 1987) ("To prove a negligent supervision theory, a plaintiff must establish that the hospital knew or should have known that a physician was not competent to provide certain care and that the hospital's failure to supervise the physician caused injury to the plaintiff."). Put another way, "the plaintiff must show that the defendant 'had a reason and opportunity to act, . . . failed to adequately discharge his duty to supervise, and . . . thereby contributed to the cause of the accident.'" *Krieg*, 2015 WL 12669893 at *10 (quoting *Boomer v. Frank*, 993 P.2d 456, 461 (Ariz. Ct. App. 1999)).

Finally, "[t]o prevail on a negligent training claim, a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Guerra v. State*, 323 P.3d 765, 772 (Ariz. Ct. App. 2014). Importantly, "[a] showing of an employee's incompetence is not necessarily enough; the plaintiff must also present evidence showing what training should have been provided, and that its omission proximately caused the plaintiff's injuries." *Id.* at 772-73.

C. **Analysis**

As discussed in Part I above, Plaintiffs have not produced any evidence from which a rational jury could find that Singh was incompetent or that Mann knew Singh was incompetent. This dooms Plaintiffs' claim for negligent hiring, supervision, and training. After all, the hiring claim requires proof that Mann had reason to believe, at the time Singh was hired in 2007, that Singh was incompetent. *Andersen*, 696 P.2d at 1346. The supervision claim requires proof that Mann should have known about Singh's

incompetence, thus giving Mann some "reason . . . to act," *i.e.*, some greater supervision responsibility, which Mann did not fulfill. *See Krieg*, 2015 WL 12669893 at *10 (citation omitted). Plaintiffs' failure to show incompetence is also relevant to the training claim. Furthermore, Plaintiffs failed to present any evidence showing what training should have been provided and how Mann's failure to provide it caused their injuries.

Notwithstanding all of this, Plaintiffs advance a negligence per se argument predicated on Mann's failure, in response to a discovery request for Singh's "employment file," to produce documents that Mann was allegedly required to maintain under the FMCSRs. (Doc. 78 at 7, 14.)

This argument lacks merit. "When a law or regulation has been enacted for public safety, failure to comply with that law or regulation is negligence per se if such conduct is the proximate cause of an injury." *Hatch Dev., LLC v. Solomon*, 377 P.3d 368, 374 (Ariz. Ct. App. 2016); *see also Gardner v. Nationstar Mortg., LLC*, 258 F. Supp. 3d 956, 975 (D. Ariz. 2017) (citation omitted) ("Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence per se."). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Hatch Dev.*, 377 P.3d at 374 (quoting *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990)). The Court also must "determine[] that the statute's purpose is in part to protect a class of persons that includes the plaintiff and the specific interest at issue from the type of harm that occurred and against the particular action that caused the harm." *Tellez*, 933 P.2d at 1237.

Here, as an initial matter, it's unclear whether Mann actually violated the FMCSRs identified by Plaintiffs.[6] Also, Plaintiffs made only a cursory attempt to establish that the

---

[6] For example, 49 C.F.R. § 391.21 appears to govern the conduct of commercial vehicle drivers, not their employers. Additionally, 49 C.F.R. § 380.505 pertains to an employer's duty with respect to "entry-level driver[s]," yet Plaintiffs have provided no

- 12 -

FMCSRs at issue were enacted to promote public safety and to protect a class of persons that includes Plaintiffs against the specific harm that occurred here. (Doc. 78 at 2.) Nevertheless, even assuming for the sake of argument that the FMCSRs were enacted for these reasons,[7] Plaintiffs have failed to create a genuine issue of fact on the issue of proximate causation. *Hill,* 2005 WL 2991589 at *2 (even if a violation of an FMCSR "supports a negligence per se claim, the plaintiff still must show that the negligence was the cause of the plaintiff's injuries"). Here, Plaintiffs have provided no factual support for the theory that the collision would have been avoided had Mann maintained copies of the documents allegedly required by the FMCSRs. *See, e.g., Terrell,* 168 F. Supp. 3d at 1310-11; *Santana,* 2009 WL 2462500 at *6; *Hill,* 2005 WL 2991589 at *3; *Wallen,* 343 S.E.2d at 78.

Accordingly, **IT IS ORDERED** that Defendants' partial motion for summary judgment (Doc. 70) is **GRANTED**.

Dated this 30th day of January, 2019.

Dominic W. Lanza
United States District Judge

---

facts or law in support of any contention that Singh was an "entry-level driver."

[7] *Compare Hill,* 2005 WL 2991589 at *5 ("FMCSR 392.60(a) was not designed or intended to promote the safe operation of commercial vehicles, including the safety of people who share the road with commercial vehicles. Therefore, this regulation is not a proper basis for a negligence per se claim."), *with Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 840 (Tex. Ct. App. 2006) ("The purpose of the FMCSR is, among other things, to promote the safe operation of commercial motor vehicles, minimize dangers to the health of operators of commercial motor vehicles, and enhance commercial motor vehicle safety and thereby reduce highway fatalities, injuries, and property damage. The gravamen of Torres's claim against Omega and Cardenas is a highway injury caused by the unsafe operation of a commercial motor vehicle. We hold that Torres belongs to the class the regulations were intended to protect, and his injury is of a type that the regulations were designed to prevent.").